IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-03063-KHR

KRISTINE KLINE,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Kelly H. Rankin

      This action comes before the court pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1383(c), for review of the Commissioner of Social Security (the "Commissioner" or "Defendant")'s final decision denying Kristine Kline's ("Plaintiff") application for Supplemental Security Income ("SSI"). Plaintiff filed the Complaint on December 14, 2016, and the case was assigned to District Judge Wiley Y. Daniel. Doc. 1. On April 27, 2017, the parties consented to magistrate jurisdiction pursuant to 28 U.S.C. § 626. Doc. 18. On July 17, 2017, the case was reassigned to Magistrate Judge Craig B. Shaffer. Doc. 30. After Judge Shaffer became unavailable, the case was reassigned to the undersigned on November 8, 2017.  Doc. 32.  The court has carefully considered the Amended Complaint, Plaintiff's Opening Brief (filed June 2, 2017) (Doc. 23), Defendant's Response Brief (filed June 28, 2017) (Doc. 28), Plaintiff's Reply (filed July 14, 2017) (Doc. 29), the entire case file, the Social Security administrative record ("AR"), and the applicable law. Oral argument would not materially assist the court. For the following reasons, the court reverses and remands the Commissioner's decision.

# I.    BACKGROUND

On March 30, 2015, Plaintiff filed an application for SSI claiming she has been disabled since January 2015 due to several physical and mental conditions. AR at 122, 249. She was 39 years old at the time. *Id.* at 25. Her application was denied administratively. *Id.* at 138 (July 2, 2015 transmittal). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). Her case was assigned to ALJ Lowell Fortune.

The Commissioner's regulations define a five-step process for ALJs to determine whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*Wilson v. Astrue,* No. 10-cv-00675-REB, 2011 WL 97234, at *2 (D. Colo. Jan. 12, 2011) (citing 20 C.F.R. § 404.1520(b)-(f)); *see also* 20 C.F.R § 416.920;[1] *Williams v. Bowen*, 844 F.2d 748,

---

[1] "Part 404 of Title 20 of the Code of Federal Regulations … contain[s] the Commissioner's regulations relating to disability insurance benefits[;] identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits." *Wilson,* 2011 WL 97234 at n. 2.

750–51 (10th Cir. 1988). Impairments that meet a "listing" and a duration requirement are deemed disabling at step three, with no need to proceed further in the 5-step analysis.[2] After the third step, the ALJ is required to assess the claimant's residual functional capacity. 20 C.F.R. § 416.920(e).

The ALJ held an evidentiary hearing on June 17, 2016. AR at 33-93. Plaintiff was represented by counsel. The ALJ heard the testimony of two medical experts, Mark Farber, M.D., and David Glassmire, Ph.D., a clinical psychologist. He also heard the testimony of Plaintiff and a vocational expert ("VE"), Ashley Bryars. The ALJ began the hearing by noting:

> today I received a new medical record, 157 pages of records from Community Reach Center. So, Dr. Farber … what I do in situations such as this where the medical records are not received in time for you to receive them, I'm going to take your testimony.
> I'll have you testify, and then after the close of the hearing I'll mail the new records to you and I'll ask you to review them and send me a letter back saying whether or not these new records change your opinions in any way. And, if so, state the change in the opinions.

AR at 35. These newly-received records were for mental health treatment Plaintiff received in the year preceding the hearing (April 6, 2015 to June 7, 2016) and were later exhibited as B14F. *Id.* at 806-962. The ALJ then asked Dr. Farber, based on his review of the record to date (*i.e.*, Exhibits B1F-B13F) what, in his opinion, Plaintiff's physical impairments were. AR at 37. Dr. Farber testified:

> Well, just let me say, the missing records in the presumptive diagnosis of multiple sclerosis, and in 9-F we have a letter from Dr. O'Brien talking about the fact that she has been diagnosed and that she has all kinds of difficulties. However, we don't have any follow up records of the multiple sclerosis, the clinical response,

---

[2] 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."), *Id.* § 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled.").

whatever treatment she got, et cetera. So, that's a huge problem in terms of what I have to review.

There's an MRI at 7-F Page 110 which is consistent where findings are worrisome, Page 110 for demyelenating process such as multiple sclerosis in the correct clinical setting, which means that we need to see a clinical specialist dealing with multiple sclerosis, which is normally a neurologist, who is going to confirm the diagnosis on clinical grounds to give us indications of what the impairments are, what the treatment is going to be, et cetera. We don't have that.

AR at 37. Dr. Farber discussed the medical records relating to Plaintiff's alleged conditions in her right knee, morbid obesity, and lumbar spine; the lack of medical evidence to support her alleged heart conditions; and opined that given the "not convincing" evidence as to multiple sclerosis, her physical impairments did not meet any of the "listings" (for step 3 analysis).

Because Plaintiff's physical impairments did not meet a listing, Dr. Farber opined regarding Plaintiff's functional limitations or work restrictions. In his opinion, Plaintiff could work full time at the sedentary level, with several limitations:

Regular sedentary, lift and/or carry ten pounds occasionally and less than ten pounds frequently; sit for up to six hours in an eight hour day with usual breaks; stand and/or walk for up to two hours with usual breaks in an eight hour day. I would not limit any limit on foot controls based on what I have. I would not place any limit on upper extremity reaching, handling in all directions, fingering, fine and gross manipulation. However, on postural I would say there would be no ropes, ladders, scaffolds or unprotected heights. * * * There would be no extremes of heat or cold. * * * And there would be no particular requirements to balance * * * because of the MRI. * * * I would say that there would be no crawling and no kneeling. * * * Occasional stooping, occasional bending, occasional twisting, and occasional stairs, and occasional ramps.

*Id.* at 39-40.

Plaintiff's counsel then brought to the ALJ's attention that treatment records from Kaiser Permanente – which his office had submitted or attempted to submit two weeks earlier – were missing from the record. *Id.* at 41. Plaintiff's counsel indicates these records covered the mental

health and physical treatment Plaintiff received from June 23, 2015 to May 16, 2016 (*i.e.,* the year preceding the hearing), and "all my questions for the doctor would have been related to those submissions." AR at 41. After the hearing, Plaintiff's counsel resubmitted these 400 pages of medical records (*Id.* at 319), and they were exhibited as B15F. *Id.* at 964-1363.

The ALJ then called the mental health expert, Dr. Glassmire, and explained he would send the additional records from Community Reach Center and Kaiser to Dr. Glassmire for review. The ALJ instructed Dr. Glassmire to send a letter stating whether the new exhibits change his opinions and if so in what way. *Id.* at 43-44. Based on his review of Exhibits B1F-13F, Dr. Glassmire opined Plaintiff had an unspecified mood disorder meeting a listing 12.04.

> Claimant has been diagnosed with bipolar disorder and there certainly is a possibility that the claimant also has ongoing amphetamine use, which could account for any manic type symptoms that the claimant has. So, it may be just more of an underlying unipolar depressive disorder with the substance use superimposed, but it could also be a bipolar disorder so calling it an unspecified mood disorder.

*Id.* at 44-45. Dr. Glassmire opined Plaintiff has a substance use disorder as to methamphetamine and cannabis that meets listing 12.09.

Dr. Glassmire then gave his opinions regarding Plaintiff's functional limitations with and without the substance use (referred to in the transcript as "DANA," *i.e.,* drug and alcohol abuse, which the court refers to as "DAA"). He opined her activities of daily living are moderately impaired with DAA, mild without; her social functioning is markedly limited with DAA and moderately limited without; her concentration, persistence and pace are markedly limited with DAA and moderately limited without; she had two episodes of decompensation with DAA and none without. *Id.* at 45. Without DAA, he would limit Plaintiff's work to "simple routine tasks,

no interaction with the public, and only occasional interactions with coworkers and supervisors." AR at 46.

On cross-exam, Plaintiff's counsel pointed to the opinion of Plaintiff's treating physician, Daniel O'Brien, D.O., dated November 24, 2015 which noted among other things Plaintiff "completed a sobriety program months ago and has undergone regular urine tests through my clinic." AR at 46-47 (reading from ex. B9F, now AR at 749). Based on that document and opinions of Rod Falcon (noted in the Commissioner's exhibit indices as Rod or Ron Elcon) given in December 2015 (exs. B10F and B11F, AR at 756-775) Plaintiff's counsel inquired of Dr. Glassmire whether he could give an opinion regarding Plaintiff's mental impairments during a period of sobriety. *Id.* at 47-48.

Dr. Glassmire did not consider Mr. Falcon's opinions a sufficient basis to opine regarding Plaintiff's impairments during sobriety because in his opinion the record did not show sobriety. Dr. Glassmire at first testified the record reflected methamphetamine use before and after Dr. O'Brien's November 2015 opinion, but Dr. Glassmire later corrected himself, noting the last record reflecting methamphetamine use was from June 22, 2015, which he characterized as "around the time of that letter." *Id.* at 50-51 (citing ex. B8F, AR at 728-48). He noted there were no drug screens in the record after Plaintiff tested positive for methamphetamine in April 2014. So he was "not comfortable that the record supports a significant period of sobriety prior to December 2015." He further testified

> an acute intoxication of methamphetamine is going to be over relatively quickly within a few – within a day or two. But the ongoing effects on mood and affect … can persist for months after discontinuing use, particularly for somebody who has chronic use. So it could be several months before you won't see ongoing, particularly mood, symptoms from methamphetamine use.

AR at 51. When asked "in this case, how many months do you think would be necessary to have an accurate period of sobriety to be able to give an accurate opinion regarding whether drugs and alcohol are significant or a contributing factor material to the issue of disability?," Dr. Glassmire testified

> Well, that question presumes that you cannot determine that during a period where the claimant is using. So, for example, there are mental status exams in this record when the claimant is not actively withdrawing or intoxicated that are relatively normal mental status exams. * * * So, I don't think that we need a period of sobriety to determine potentially whether in the absence of substance use somebody would not be at a listing level.

*Id.* at 51-52 (citing B8-F Page 2, on 6/22/15).

A week after the hearing, the ALJ's office sent exhibits 14F and 15F to Dr. Farber and Dr. Glassmire asking that they "review these exhibits and submit a letter to Judge Fortune's attention specifying whether these exhibits change your professional opinion." AR at 221-222. Dr. Farber responded by letter of June 29, 2016, referencing the letter from the ALJ's office and stating:

> I have reviewed eshibits [sic] B14F and B15F re claimant Kristine Marie Kline, hearing 6/17/16.
> The exhibits do change my professional opinion I had rendered on the 17th of June.

AR at 1366 (marked as ex. B17F). The record does not reflect any further correspondence with Dr. Farber or any further testimony. Dr. Glassmire responded:

> Per your request, I have reviewed the additional records (Exhibits B14F through B17F) submitted for claimant Kristine Kline that were not available to me at the time of the hearing on June 17, 2016. After reviewing the additional records, the opinions I provided during the hearing on June 17, 2016 have not changed. Please let me know if you have any additional questions for me regarding my review of the records for this claimant.

AR at 1368 (letter dated July 13, 2016 marked as ex. B18F).

On August 23, 2016, the ALJ issued his decision denying benefits. AR at 9-32. The ALJ's opinion followed the five-step process outlined in the Social Security regulations. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since March 30, 2015. *Id*. at 14. At step two, the ALJ found that several of Plaintiff's conditions constituted "medically determinable and severe impairments:"

> multiple sclerosis, right knee disorder, obesity, lumbar spine disorder, unspecified mood disorder, and substance use disorder.

AR at 14. Based on Dr. Farber's hearing testimony, the ALJ noted he had given Plaintiff

> every benefit of the doubt in this finding. The evidence of record could equally support a different finding - i.e., that the multiple sclerosis diagnosis is not medically determinable. According to Dr. Farber, the medical expert (ME), although there is such a diagnosis in the medical records, the diagnosis is presumptive only.

*Id.* at 15. Also based on Dr. Farber's hearing testimony, the ALJ concluded Plaintiff's alleged shortness of breath and chronic heart failure were not supported by the medical records. *Id.* at 15. In connection with these findings, the ALJ did not discuss Dr. Farber's letter that noted his post-hearing review of the new medical records changed his opinion.

At step three, the ALJ found Plaintiff's "impairments, including the substance use disorder" met or medically equaled a "listed" impairment under section 12.04 of the Commissioner's regulation, 20 C.F.R. § Pt. 404, Subpt. P, App. 1. *Id*. at 15-16. The ALJ thus found Plaintiff disabled at step three.

However, because Plaintiff's disability involved medical evidence of substance use, the ALJ next analyzed "whether the substance use disorder is a contributing factor material to the determination of disability under section 1614(a)(3)(j) of the Social Security Act. If so, the individual is not under a disability." AR at 12. The ALJ recognized he must

> evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance use. If the remaining limitations would not be disabling, the substance use disorder is a contributing factor material to the determination of disability (20 CFR 416.935). If so, the claimant is not disabled.

*Id.* at 14.

Using the language of 20 C.F.R. § 416.935, the ALJ found that "if the claimant stopped the substance use, … claimant would continue to have a severe impairment or combination of impairments;" those impairments would not meet any listing; she would have a residual functional capacity ("RFC") to perform sedentary work, subject to several restrictions based on Dr. Farber and Dr. Glassmire's testimony; considering those restrictions, she would not be able to perform her past relevant work; but even with those restrictions, she could perform a significant number of jobs that exist in the economy and thus without DAA, Plaintiff is not disabled. *Id.* at 16-25. In determining Plaintiff's RFC without DAA, the ALJ states that Dr. Farber and Dr. Glassmire did not change their opinions after reviewing the new records. *Id.* at 22. The ALJ therefore found Plaintiff's "substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use" and therefore is not "disabled" for purposes of the Social Security Act. AR at 26. Accordingly, Plaintiff's application was denied.

Plaintiff requested review by the Appeals Council. On October 3, 2016, the Appeals Council denied her request. *Id.* at 3-7. The decision of the ALJ then became the final decision of the Commissioner. *See, e.g.,* 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1481. Because Plaintiff did not receive the Appeals Council decision until October 11, 2016, Plaintiff requested (AR at 2) and obtained (AR at 1) an extension of time from the Council, extending the time for filing this action to December 16, 2016. Plaintiff then filed her original complaint on December 14, 2016.

Doc. 1. The complaint was timely, and as the "district court of the United States for the judicial district in which the plaintiff resides," this court has jurisdiction. 42 U.S.C. § 405(g) ("commenced within sixty days after the mailing to him of notice … or within such further time as the Commissioner of Social Security may allow"); 42 U.S.C. § 1383(c)(3).

## II. LEGAL STANDARD

In reviewing the Commissioner's final decision,

> [o]ur review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance.

*Lee v. Berryhill,* 690 F. App'x 589, 590 (10th Cir. 2017) (internal quotation marks and citations omitted, citing *inter alia Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). *See also* 42 U.S.C. § 405(g) ("The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive," applicable here through 42 U.S.C. § 1383(c)(3)).

Accordingly, the court may not reverse an ALJ because the court may have reached a different result based on the record; the question is instead whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "We review only the *sufficiency* of the evidence, not its weight .... Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views." *Lee,* 690 F. App'x at 591-92. Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the

substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In

addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart

from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir.

1993) (internal citation omitted).

The Social Security Act defines a person as disabled

> only if his physical and/or mental impairments preclude him from
> performing both his previous work and any other "substantial
> gainful work which exists in the national economy." 42 U.S.C. §
> 423(d)(2) [and 42 U.S.C. § 1382c(a)(3)(B)]. "When a claimant has
> one or more severe impairments the Social Security [Act] requires
> the [Commissioner] to consider the combined effects of the
> impairments in making a disability determination." … However,
> the mere existence of a severe impairment or combination of
> impairments does not require a finding that an individual is
> disabled. … To be disabling, the claimant's condition must be so
> functionally limiting as to preclude any substantial gainful activity
> for at least twelve consecutive months.

*Wilson*, 2011 WL 97234, at *1 (quoting *Campbell v. Bowen,* 822 F.2d 1518, 1521 (10th Cir.

1987)). "[F]inding that a claimant is able to engage in substantial gainful activity requires more

than a simple determination that the claimant can find employment and that he can physically

perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he

finds for a significant period of time." *Fritz v. Colvin,* 15–cv–00230–JLK, 2017 WL 219327, at

*8 (D. Colo. Jan. 18, 2017) (emphasis in original, quoting *Washington v. Shalala,* 37 F.3d 1437,

1442 (10th Cir. 1994)). *See also* 20 C.F.R. § 416.974(c) (substantial gainful activity

contemplates work activity sustained for at least 6 months).

As noted above, the Commissioner has defined a five-step process for determining

whether a claimant is disabled. The claimant has the burden of proof in steps one through four.

The Commissioner bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084

(10th Cir. 2007). In addition to the five-step analysis, a 1996 amendment of the Social Security

Act requires that "an individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). The Commissioner's regulation implementing this statute provides:

> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
> > (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
> >
> > (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
> >
> > (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
> >
> > (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935(a), (b). With these standards in mind, the court turns to the appeal at hand.

# III.    ANALYSIS

*A.    Dr. Farber's Change of Opinion Regarding Plaintiff's Physical Impairments*

As perhaps foreshadowed above, the court finds reversal and remand necessary due to Dr. Farber's post-hearing change of opinion based on exhibits B14F and B15F.[3] The ALJ decided that the medical records which were received too late for the medical experts' review were significant enough to require the experts' post-hearing review and statements as to whether and how they changed their opinions. This was no doubt correct, since the record given to the medical experts before the hearing apparently lacked any record of Plaintiff's medical and mental health treatment for the last year. In the decision, the ALJ states:

> Both MEs then reviewed additional evidence submitted into the file at the time of hearing and opined that this additional evidence did not change their opinions of the claimant's functional limitations as noted above.

AR at 22. This is incorrect. Per Dr. Farber's June 29, 2016 letter, exhibits B14F and B15F "do change" the opinion he gave at the June 17, 2016 hearing. AR at 1366. Although the ALJ instructed Dr. Farber during the hearing to do so, the letter does not state in what way or why those records changed his opinion, or what Dr. Farber's new opinion is. Perhaps the ALJ and parties therefore impliedly read the letter as omitting the word "not" by typographical error. But Dr. Farber references the letter from the ALJ's office – a copy of which he includes with his response – and that letter requests only that he state whether the exhibits change his opinion. It does not ask Dr. Farber to state in what way his opinion changed. AR at 1367. Nothing in the record clarifies or indicates Dr. Farber's new opinion.

---

[3] Plaintiff argues error because Dr. Farber's June 29, 2016 letter reflects he was not sent ex. B16F (Dr. O'Brien's June 22, 2016 letter), but Plaintiff does not argue error in the failure to obtain Dr. Farber's changed opinion. Defendant's brief repeats the ALJ's error in stating Dr. Farber did not change his opinion. But "[t]his Court cannot . . . ignore obvious and prejudicial errors, even if the litigants did not identify and debate them." *Barnthouse v. Berryhill,* No. 17-cv-00732-STV, 2018 WL 797748, at *11 (D. Colo. Feb. 9, 2018).

If Dr. Farber's opinion was only one of several pieces of evidence supporting the finding that Plaintiff is not disabled by her physical impairments, reversal might not be required by the failure to obtain his new opinion. *See, e.g., Nesbit-Francis v. Comm'r of Soc. Sec.,* No. CV 15-1703, 2017 WL 590327, at *10 (E.D.N.Y. Feb. 14, 2017) (ALJ obtained doctor's new opinion at a second hearing, and failure to inquire regarding the reason for the change was harmless error, given other support for the ALJ's findings).

But in this case, Dr. Farber's opinion is central to the ALJ's finding that Plaintiff's physical conditions do not cause her to be disabled. This finding is in turn central to the ALJ's conclusion that Plaintiff's DAA is a material contributing factor to finding her disabled, and she is deemed not disabled under 42 U.S.C. § 1382c(a)(3)(J). For instance, Dr. Farber testified that some of Plaintiff's medical records reflect a multiple sclerosis diagnosis, but normally such a diagnosis results in further treatment by a neurologist. The record he reviewed for the hearing lacked any such treatment records. Dr. Farber therefore opined that the multiple sclerosis diagnosis was only presumptive. Although Plaintiff had physical impairments (the presumptive multiple sclerosis diagnosis, morbid obesity, lumbar spine pain and right knee pain), Dr. Farber considered those impairments were not severe and she was able to perform sedentary work, subject to certain restrictions he identified. As to those issues, the ALJ gave Dr. Farber's opinion the "most weight" of any of the medical opinions in the record. AR at 25.

The ALJ's discussion of the medical records regarding Plaintiff's physical impairments is too general to provide substantial support for the ALJ's finding of non-disability. The ALJ notes the record reflects "chronic pain in her lower back and legs, with a reported recent diagnosis of relapsing remitting multiple sclerosis… . Treatment records, however, note the claimant to experience symptoms such as shortness of breath and difficulty ambulating due to her weight."

AR at 19. But the ALJ cites no specific records.  It is also unclear to the court what significance the ALJ drew from the fact that Plaintiff's shortness of breath and difficulty ambulating are due to her weight. The ALJ found obesity is one of Plaintiff's medically determinable and severe impairments. The ALJ identifies an example of Plaintiff complaining of physical impairments but declining to go to the hospital as advised, but cites only to an entire exhibit (B7F) consisting of 95 pages of medical records. AR at 19. "Such general citations do not constitute substantial evidence in support of the ALJ's decision, and ALJ's in this district have received fair notice of this concern." *Fritz*, 2017 WL 219327, at *15 (collecting cases).

In the court's review, the only record evidence that is consistent with Dr. Farber's opinion is the RFC assessment from SDM Jade Kelly, the "single decision maker" at the SSA office of Disability Determination Services who administratively denied Plaintiff's claim. AR at 132. Mr. or Ms. Kelly does not purport to be a doctor or other medical source. The ALJ does not cite that assessment and in fact explained in the hearing that he obtained Dr. Farber's opinion because DDS made its determination based on an SDM opinion. AR at 43.

Meanwhile, the only other medical opinions regarding Plaintiff's physical conditions are from her treating physician,[4] Dr. O'Brien, and do not support the ALJ's finding of non-disability. In November 2015, Dr. O'Brien notes he has been treating her for numerous medical conditions since August 2014, and despite her completion of a sobriety program and openness to treatments, in his opinion her several medical conditions made her unable to work.  AR at 749 (ex. 9BF). Shortly after the hearing, Dr. O'Brien also noted her "persistent swelling in her legs," for which he "recommend[s] she elevate her legs throughout the day.  20-30 minutes each hour would be

---

[4] DDS obtained a medical opinion from Ellen Ryan, M.D., but this appears to regard only Plaintiff's mental health conditions.  AR at 129.

reasonable." AR at 1365 (ex. B16F). Dr. O'Brien's opinions therefore do not agree with Dr. Farber and do not support the ALJ's finding of non-disability.[5]

Likewise, Plaintiff's testimony regarding her medical conditions and limitations does not agree with Dr. Farber's opinions. *Id.* at 63, 69. The ALJ found Plaintiff's statements regarding her conditions and limitations are not entirely consistent with the other evidence, but points only to Plaintiff's daily activities that are largely sedentary (AR at 18), having a fiancé, and her aquatic exercise regimen. *Id.* at 19 (citing exs. 14F, 15F). "[S]poradic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).

The ALJ does not explain whether he believed having a fiancé is relevant to Plaintiff's physical impairments, mental impairments, or both. Assuming an engagement could be relevant to physical impairments, from the court's review it appears the Plaintiff first reported having a fiancé in October 2015 (B14F at p. 11, AR at 816) and references the relationship positively in November 2015 (*Id.* at 921) and January 2016 (*Id.* at 929). But by April 26, 2016, Plaintiff's therapist notes Plaintiff requested therapy in part due to "challenges regarding breaking up w/abusive ex" (AR at 949; B14F at p. 144); on May 6, 2016, Plaintiff reported in the past tense a six-year relationship with an abusive man. AR at 950. During the hearing, Plaintiff testified that she had recently been through a "really bad break up." AR at 74. It appears Plaintiff had a fiancé for a few months, and the court does not see how this could support the ALJ's finding that Plaintiff's physical impairments are not disabling.

As to Plaintiff's aquatic exercise, this activity underscores Plaintiff's assertions of back and leg pain, and her attempts to reduce her obesity. Plaintiff's health care providers instructed

---

[5] The court does not purport to decide whether the ALJ should give greater weight to Dr. O'Brien's opinions on remand, but simply notes that they do not provide substantial support for the ALJ's finding of non-disability.

her to exercise, and at times specify aquatics to permit more exercise with less pain. AR at 995-96 ("I did encourage continued work outs in the pool on most days of the week as she is able to get more of a workup [sic]done in the pool as opposed to dry land secondary to the pain"); *Id.* at 1010, 1045. *See also, e.g., Curran-Kicksey v. Barnhart*, 315 F.3d 964, 971–72 (8th Cir. 2003) (physical therapy for fibromyalgia pain included aquatic aerobic conditioning). *Cf., Kennelly v. Astrue,* 313 F. App'x 977, 979 (9th Cir. 2009) (affirming ALJ's discounting of claimant's symptom testimony in part because she did not follow her doctors' recommendations to do aquatic therapy). Claimants such as Plaintiff should not be put in a "Catch 22" for attempting to reduce physical impairments by aquatic exercise.[6]

"[U]nlike the typical judicial proceeding, a social security disability hearing is nonadversarial, with the ALJ responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (internal quotation marks omitted). *See also* 20 C.F.R. § 416.1444 (requiring the ALJ to "look[ ] fully into the issues"). The duty applies at every step. *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999).

Dr. Farber's opinion was clearly central to the question of whether Plaintiff would be disabled if she stopped using methamphetamine.[7] Despite the ALJ's original plan to have no further hearing testimony from the medical experts (AR at 36), once he received Dr. Farber's

---

[6] In addition, the court questions the relevance of Plaintiff's ability to do aquatic exercise for determining whether she is able to perform work, unless the record reflects there is a significant number of sedentary jobs in the economy that can be performed while most of the employee's weight is supported by water.

[7] Plaintiff argues the ALJ's use of the language "if you stopped using" ignores that Plaintiff completed a sobriety program and stopped using methamphetamines in 2015, albeit months after she filed her application in this case. The ALJ employed the regulation's language, which is not erroneous even when the claimant has already stopped using DAA. *See, e.g., Martinez v. Colvin,* No. 14-1358-JWL, 2016 WL 344728, at *4-5 (D. Kan. Jan. 28, 2016). The ALJ recognized Plaintiff asserts sobriety since mid-2015, albeit without expressly finding when that period of sobriety began.

letter the ALJ should have either reopened the hearing or requested further written explanation from Dr. Farber as to how exhibits B14F and B15F changed his opinion. Dr. Farber's later-changed opinion is the only evidence the ALJ cites with adequate specificity to find Plaintiff's many physical impairments are not disabling. Because the ALJ assumes Plaintiff's physical impairments remain even in the absence of DAA, the severity of those impairments is central to the question of whether Plaintiff would be disabled independent of her DAA.

As the record currently stands, the ALJ's finding of non-disability is not supported by substantial evidence, and the court must reverse and remand the decision for further development of the record. *Cf., Cordova v. Berryhill*, No. 3:17-CV-01009, 2017 WL 6503985, at *7 (M.D. Pa. Dec. 19, 2017) (remanding for further development of the record because subsequent medical evidence indicated a substantial change in claimant's condition and "calls into question the continuing reliability" of a doctor's report); *Lamm v. Comm'r of Soc. Sec.,* No. 6:12-CV-1428-ORL-GJK, 2014 WL 687995, at *3 (M.D. Fla. Feb. 21, 2014) (reversing and remanding where the ALJ stated he had modified non-examining doctors' opinions based on new evidence, but did not explain what modifications or what new evidence supported them); *Walters v. Colvin,* 213 F. Supp. 3d 1223, 1232 (N.D. Cal. 2016) (remanding for further development of the record where the ALJ relied heavily on a DDS doctor's opinion, the validity of which was later materially called into question by the doctor's removal from the state DDS panel).

B.      *The ALJ's Analysis of Treating Sources' Opinions*

Plaintiff argues that in determining the weight to give to Dr. O'Brien's treating medical opinions under the Commissioner's regulation for claims made before March 2017 (20 C.F.R. § 416.927(c)(2)), the ALJ "looked only to the non-treating and non-examining opinions in the record to determine whether or not Dr. O'Brien's opinion was consistent with the evidence as a

whole rather than looking to whether there was substantial evidence to support Dr. O'Brien's opinion as is required under the legal standard." Doc. 23 (opening brief) at 20. Defendant does not contest this, but argues it was a reasonable approach. Doc. 28 (response brief) at 13.

The court expresses no opinion regarding what weight the ALJ should give to each of the treating and non-examining opinions on remand, but notes the ALJ should "give good reasons" why he gives those opinions the weight he does. *Knight v. Astrue*, 388 F. App'x 768, 771 (10th Cir. 2010) ("After considering the pertinent factors, the ALJ must 'give good reasons in the notice of determination or decision' for the weight he ultimately assigns the opinion.") See also 20 C.F.R. § 416.927(c)(4) (requiring analysis of any medical opinion's consistency "with the record as a whole").

Regarding the opinions of treating sources in particular, the ALJ is to consider among several factors whether the opinion is "not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2). The ALJ appears to assume "other substantial evidence" here means only other medical opinions. AR at 20. The court finds no support for this interpretation. *See, e.g.*, *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions,* SSR 96-2P (S.S.A. July 2, 1996) ("Depending upon the facts of a given case, any kind of medical or nonmedical evidence can potentially satisfy the substantial evidence test," rescinded for claims filed after March 27, 2017, 82 Fed. Reg. 15263 (SSA Mar. 27, 2017); *Garcia v. Colvin*, 219 F. Supp. 3d 1063, 1071 (D. Colo. 2016) (citing claimant's testimony as among the "other substantial evidence" in the case). On remand, the ALJ should address why or how Dr. O'Brien's (indeed, each treating medical source's) opinions are or are not inconsistent with all other substantial evidence in the record – not only the other medical opinions but also the medical records and Plaintiff's testimony.

C.       *Plaintiff's Mental Health Impairments.*

Plaintiff argues Dr. Glassmire's opinion is not substantial evidence to support the ALJ's findings with respect to her mental impairments because he testified inconsistently regarding when Plaintiff stopped using methamphetamine, his (self-corrected) testimony reflects Mr. Falcon's opinion of Plaintiff's mental health limitations was during sobriety, and Dr. Glassmire's opinion is overwhelmed by Mr. Falcon's opinion and the records showing Plaintiff's mental health impairments during sobriety. Although Plaintiff's argument is not a model of clarity, the court concludes that the ALJ's decision is not sufficiently detailed regarding how or why Dr. Glassmire's opinions are consistent with the record regarding Plaintiff's sobriety and manic episodes thereafter.

Although the ALJ states the "[m]edical records reveal the claimant reporting sobriety from methamphetamine use in December 2015" (AR at 15) this is both (a) unclear whether the ALJ means that December 2015 records reflect Plaintiff claimed sobriety from some unstated earlier date, or if she claimed her sobriety began that month; and (b) lacking citation to specific records. In the court's review, there is no record support for Dr. Glassmire's initial testimony that Plaintiff's former use of methamphetamine and marijuana were "ongoing" at the time of the June 17, 2016 hearing. The ALJ cites and relies on that initial testimony (AR at 22), but Dr. Glassmire corrected his testimony to state the most recent reflection of methamphetamine use was a June 22, 2015 record. AR at 53. The June 22, 2015 record refers to Plaintiff reporting she had been "clean for three weeks," *i.e.,* since late May 2015. AR 729. The ALJ also cites (AR at 21) an opinion from Dr. Ryan that Plaintiff's last documented use was in May 2015, and exhibit B14F as reporting sobriety from May 2015.  AR at 19.  This is consistent with several medical records. *See, e.g.,* AR 438, 545, 813, 876. Plaintiff testified she had not used marijuana for 10

years until one relapse in February 2016 when she had run out of prescription pain medication. AR at 59. She testified her last use of methamphetamine was around the 4th of July 2015. AR at 60. Sobriety beginning in early July 2015 is consistent with at least one contemporaneous medical record (AR at 883, August 3, 2015 treatment notes "completed treatment program" and sobriety for "over one month"), and Dr. O'Brien's letter of November 2015 states Plaintiff "successfully completed a sobriety program months ago" and had been doing monthly drug testing in Dr. O'Brien's clinic. AR 749 (B9F).

In short, it appears all record evidence is that Plaintiff stopped using DAA by the 4th of July 2015, but the ALJ also referred to Dr. Glassmire's testimony that Plaintiff's DAA was ongoing. The ALJ made no specific finding of when Plaintiff became sober, apparently in reliance on Dr. Glassmire's opinion that a period of sobriety was unnecessary to determine whether Plaintiff was disabled without DAA. Dr. Glassmire pointed to Plaintiff's "relatively normal mental status" in her mental health appointment with Kaiser Permanente on June 22, 2015. AR at 51-52 (citing ex. B8F page 2, now AR 729). The June 22, 2015 treatment notes were on a day she had "been clean for about 3 weeks" (*Id.*). Dr. Glassmire deemed she was not actively intoxicated or coming down from methamphetamine that day, and concluded Plaintiff's mental health impairments only meet the listing level when she was actively using or coming down from methamphetamine.

But neither Dr. Glassmire nor the ALJ address the June 22, 2015 treatment record's reference to Plaintiff's manic state. The June 22, 2015 notes reflect Plaintiff seeking treatment because she "believes that her phone has been being hacked for last 3 years," about which "no one ever believes her or wants to investigate it," her desire to "know if her phone is really being hacked," and her desire for someone to believe her and investigate. AR at 729-30. Throughout

the time period of alleged disability (and preceding it), a belief that her phone and/or computer have been hacked is a recurrent topic in Plaintiff's treatment notes when Plaintiff was manic. *See, e.g., Id.* at 734 (June 11, 2015); 746 (April 4, 2014); 955 (May 16, 2016, paranoid thoughts and persecutory delusions relating to belief that her phone had been hacked). In addition, during the time period in which there is no evidence of methamphetamine use, several of Plaintiff's treatment notes otherwise reflect manic episodes – albeit in conjunction with some medication noncompliance. AR 950, 955-56, 960. Yet her mental health providers were also concerned at the time that she was being prescribed too many medications by her primary doctor (or others). *Id. See Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir. 1993) (factors to consider before holding medication non-compliance against claimant's credibility). Plaintiff also testified at the June 17, 2016 hearing that her manic episodes were worse than ever. AR at 74.

In short, in explaining the great weight he gave to Dr. Glassmire's opinions that Plaintiff's mental impairments are not severe when she is not actively using methamphetamine, the ALJ did not address Plaintiff's testimony and the medical records reflecting Plaintiff's several presentations in a manic state when she apparently was not actively using methamphetamine. On remand, the ALJ should do so. *See, e.g., Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005) ("in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

Moreover, as Plaintiff points out, Plaintiff's mental health provider (Rod Falcon, noted in treatment records as "CNS-APN") opined in December 2015 that Plaintiff's limitations from her mental impairments would still apply if she stopped using drugs. AR at 775 (B10F). Mr. Falcon explained that "in manic episode, has led to previous episodes of substance abuse and poor

decision making." AR at 775. The ALJ considered Mr. Falcon's opinion (referred to as Mr. Elcon) and gave it "less" weight than Dr. Glassmire's opinion (*Id.* at 25), apparently because although Mr. Falcon had treated Plaintiff for a significant time period (*Id.* at 770), he did not review Plaintiff's treatment records from other providers, did not present medical evidence in support, "provided less than better explanation" for his opinions, and was not an "acceptable medical source." *Id.* at 23-25. But the ALJ does not address why the records of Plaintiff's mental health treatment under Mr. Falcon's supervision (in *e.g.,* exs. B5F and B14F) do not support his opinions, why as a treating provider Mr. Falcon would need to review other providers' treatment records to give an opinion, nor why Mr. Falcon's explanation of his opinions (see AR at 770-775, B11F) are "less than better." This is not sufficiently detailed to permit the court to review the ALJ's apparent rejection of Mr. Falcon's opinion that Plaintiff would demonstrate the same mental disorders without DAA. "[E]ven non-acceptable medical source opinions must be considered, and if uncontroverted but rejected or given little weight, the ALJ's reasoning must be supported by specific references to the record," *Fritz,* 2017 WL 219327, at *15.

Finally, assuming the ALJ again finds Plaintiff disabled and then must differentiate the severity of her impairments with and without DAA, for clarity's sake the ALJ should begin the differentiation at step two to expressly identify what impairments Plaintiff still has, absent methamphetamine use. *See, e.g., Martinez v. Colvin,* No. 14-1358-JWL, 2016 WL 344728, at *4 (D. Kan. Jan. 28, 2016). But Plaintiff is incorrect in arguing the ALJ should have done the entire five step analysis once with DAA and a second time without DAA. If a claimant is found disabled at step three, that is the finding of disability which triggers the need to determine whether DAA is a material contributing factor to that finding.

## IV.    CONCLUSION

The court does not reach Plaintiff's many other arguments, and Plaintiff may address those issues to the ALJ on remand. 20 C.F.R. § 416.1483 ("[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case.").

For each of the reasons stated above, the decision of the Commissioner is REVERSED and REMANDED. The clerk of court shall enter final judgment in favor of Plaintiff.

DATED at Denver, Colorado, this 13th day of March, 2018.

BY THE COURT:

s/ _____
United States Magistrate Judge